UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. SCOTT, # 191939,            )
                                     )
                Plaintiff,           )   Case No. 1:95-cv-571
                                     )
v.                                   )   Honorable Joseph G. Scoville
                                     )
PHILIP BAIR,                         )
                                     )   **MEMORANDUM OPINION**
                Defendant.           )
                                     )

      This was a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. After three separate appellate proceedings, this case was tried to a jury on March 28 and 29, 2005. Plaintiff was represented at the jury trial by counsel S. Grace Davis, who had been appointed pursuant to this court's *pro bono* representation plan on May 31, 2000. Plaintiff's claims at the jury trial, as framed by the previous appellate decisions, were: (1) a retaliation claim against defendant Philip Bair arising from his filing of a major misconduct charge against plaintiff, allegedly in retaliation for plaintiff's filing of a grievance, and (2) a section 1983 conspiracy claim asserting that Bair conspired with another officer in fabricating the allegedly retaliatory misconduct charge. On March 29, 2005, the jury rendered its verdict (docket # 186), finding against plaintiff on both claims. The court entered judgment on the jury verdict (docket # 187) on March 30, 2005. The court thereafter discharged Ms. Davis as counsel for plaintiff, her work having been completed.

      Presently pending before the court is plaintiff's timely motion for new trial or to alter judgment, which plaintiff filed *pro se* pursuant to Fed. R. Civ. P. 59. (docket # 190). The grounds

for plaintiff's motion involve two pretrial rulings by the court.[1] First, plaintiff asserts that the court erroneously allowed defense counsel "to elicit testimony from plaintiff as to the number of grievances he has filed, the number of tickets he has received, and that he (plaintiff) has been banned from Michigan courts on orders from Ingham County Circuit Court." (Motion, docket # 190, ¶ 4). Second, plaintiff alleges error in the court's granting of a motion by Honorable Daniel Burress, a retired state circuit judge, to quash a deposition subpoena served on him in this case and the court's denial on the first day of trial of plaintiff's renewed motion for the issuance of a subpoena requiring Judge Burress to testify at trial. Finally, plaintiff alleges that his attorney was ineffective during pretrial hearings and at trial. Upon review of the record, the court finds that plaintiff's allegations are meritless. His motion for a new trial or to alter judgment will therefore be denied.

**Factual Background**

A lengthy recitation of the factual background and legal theories involved in this case is rendered unnecessary by the existence of three appellate decisions, to which the interested reader is referred. The most recent decision of the Court of Appeals summarized the underlying facts, as alleged by plaintiff, as follows:

> On July 6, 1995, Scott was required to meet with a hearing officer on an unrelated misconduct ticket. Upon Scott's checking in with Bair to gain entry to the building, Bair said to Scott of his misconduct ticket, "[T]hat doesn't surprise me." Scott asked Bair to explain this remark and indicated that he was considering filing a grievance against Bair. At that point, Bair walked over to where Scott was standing and stated, "You don't know who you're f___ing with." Bair then grabbed the back of Scott's neck and continued, "You want to f___ with me, b____!". Later that day, Scott submitted a grievance against Bair, reciting facts consistent with his later allegations in the complaint. The following day, on July 7, Bair filed a Major Misconduct Charge

---

[1] By consent filed December 1, 2004, the parties stipulated to the dispositive jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (docket # 142).

against Scott for insolence. A Major Misconduct Charge can result in a higher security classification, placement in administrative segregation, or forfeiture of good-time credits. On July 27, a hearing was held on the Misconduct Charge, and the charge was "not sustained," with the hearing officer indicating that Bair's credibility was "questionable," relying in part on the fact that the Misconduct Charge was filed "24 hours later, after the inmate had claimed to have been assaulted." Scott also submitted below an affidavit from a fellow inmate at the facility, Richard F. Thomas ("Thomas"), who claims to have overheard a conversation on July 6 between Bair and another guard, Dale Feldpausch ("Feldpausch"). Thomas stated that Bair described the events of the morning to Feldpausch, consonant with Scott's version of the facts. Bair told Feldpausch that he did not like Scott, due to Scott's repeated conflicts with Feldpausch over Scott's jailhouse lawyer activities. Feldpausch recommended to Bair that in order to cover up his wrongdoing, Bair should write a false ticket against Scott, alleging that Bair had patted down Scott after a verbal threat--the version of events Bair would ultimately write up in the Misconduct Charge. Thomas also stated that Feldpausch had told Bair that to conceal more effectively his wrongdoing, Bair should have immediately written the false ticket and taken Scott to administrative segregation.

*Scott v. Churchill*, 377 F.3d 565, 567-68 (6th Cir. 2004) (citations to record omitted). Pursuant to the remand of the Court of Appeals, the matter was scheduled for jury trial on plaintiff's retaliation and civil conspiracy claims.

Shortly before trial, plaintiff's counsel served a subpoena on Daniel Burress, a recently retired state circuit judge. The subpoena sought to compel Judge Burress to give an oral deposition at the prison where plaintiff is incarcerated. Judge Burress filed a motion to quash the subpoena. The court conducted a hearing on the motion to quash on February 7, 2005, during which plaintiff's counsel presented the court with a 30-page, handwritten affidavit from plaintiff setting forth plaintiff's allegations concerning the relevance of Judge Burress's testimony to this action. The affidavit disclosed that Judge Burress had imposed sentence in the criminal case for which plaintiff is now in prison, in addition to handling some civil proceedings involving plaintiff. The affidavit set forth a clearly delusional series of allegations to the effect that Judge Burress had conspired with

-3-

numerous public officials, including Justices of the Supreme Court, to cover up a public corruption scandal. Plaintiff's allegations, even if assumed to be true, had no bearing on the present prisoner civil rights action, which dealt with a discrete incident of alleged retaliation taking place many years after plaintiff's criminal sentencing by Burress in 1986. The court entered an oral opinion finding that Judge Burress was immune from being questioned concerning his judicial decisions or the reasons therefor under the doctrine of judicial privilege and that plaintiff had failed to show that any information known by Judge Burress in a nonjudicial capacity had relevance to the present case. (*See* Transcript of Proceedings, docket # 172). On the basis of its oral ruling, the court entered an order granting the motion to quash. (docket # 156). At the outset of the trial, before the jury was empaneled, plaintiff's counsel renewed her request to present the testimony of Judge Burress and asked for an evidentiary hearing on the issue. The court denied plaintiff's motion.

During the same pretrial hearing, outside the presence of the jury, the court made rulings on admissibility of evidence, most of which restricted defendant's proofs. Significantly, the court determined that defendant would not be allowed to retry the merits of the grievance underlying plaintiff's retaliation claim, because the grievance had not been dismissed as frivolous. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). The court ruled that the filing of the grievance was protected conduct as a matter of law and that the jury would be so instructed. Plaintiff's counsel further requested that the court exclude all evidence concerning other grievances filed by plaintiff, other lawsuits filed by plaintiff, and other misconduct tickets that plaintiff had received while in prison. After hearing from the parties, the court determined that testimony concerning plaintiff's other lawsuits was not admissible, because defendant sought to rely on them to prove that plaintiff was the sort of person who files meritless retaliation claims, a purpose forbidden by Fed. R. Evid.

404(b). The court further determined that defendant should not be allowed to delve into the other grievances filed by plaintiff while in prison, but would be allowed only to establish the fact that plaintiff had filed other grievances without mentioning the number filed.

With regard to other major misconduct tickets received by plaintiff while in prison, defendant made a convincing argument concerning their relevance to plaintiff's theory of damages. The parties agreed that the misconduct charge at issue in the present case was a "bondable" charge, meaning that plaintiff was not placed into segregation or subjected to any other administrative or punitive sanction during the pendency of the charge against him. The charge was heard by a hearing officer, who found it to be unsubstantiated and therefore dismissed it. Consequently, plaintiff never suffered any loss of good time, change of security classification, placement in segregation, or other tangible effect from the lodging of the misconduct ticket. Plaintiff's only claim for actual damages arising from the pendency of this ultimately dismissed ticket was for the time he spent in preparing his defense and for the alleged mental anguish that he suffered until the time the charge was adjudicated.[2] To refute plaintiff's contention that he suffered significant mental anguish as a result of the misconduct charge, defendant sought to put the charge in context by showing that it was not the only misconduct charge that plaintiff had faced while in prison. On this basis, the court ruled that defendant would be allowed to establish the number of misconduct charges that plaintiff had received while in prison. At the request of plaintiff's counsel, the court allowed plaintiff to establish

---

[2] Because plaintiff's complaint was filed before the April 26, 1996 enactment of the Prison Litigation Reform Act, plaintiff was allowed to seek damages for emotional distress even in the absence of any physical injury. *See Wright & Morris*, 111 F.3d 414, 417 (6th Cir. 1997); *see also Thaddeus-X v. Wozniak*, No. 99-1720, 2000 WL 712383, at * 3 (6th Cir. May 23, 2000); *Tensley v. Perry*, No. 97-2280, 1999 WL 96986, at * 1 (6th Cir. Feb. 2, 1999); *accord Swan v. Banks*, 160 F.3d 1258, 1259 (9th Cir. 1998).

how many of these tickets had been dismissed, to make sure the jury had a complete picture. The court ruled that only the number of tickets received and dismissed would be admissible, and that defendant would not be allowed to present testimony concerning the nature of the other misconduct charges or the conduct leading up to them.

As noted above, the jury trial began on March 28 and was concluded on March 29, 2005. During the examination of witnesses, defense counsel adhered to the restrictions established by the court's pretrial rulings. During his testimony, however, plaintiff volunteered that he had been "banned" by order of the Ingham County Circuit Court from filing future civil actions. He also described his reputation in prison as a "Legal Beagle," *i.e.*, a prisoner who files numerous grievances. This issue had not been raised by any attorney in pretrial motions, nor was plaintiff's volunteered testimony in this regard objected to. The jury returned a verdict finding against plaintiff on both of his claims.

### **Discussion**

Rule 59(a) of the Federal Rules of Civil Procedure grants the court discretion to order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" because the verdict was against the great weight of the evidence, the damages were excessive, or the trial was unfair to the moving party because of trial court error, erroneous instructions, or other serious defect. *See Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996); *see also Knight v. Metropolitan Gov't of Nashville & Davidson County, Tenn.*, No. 03-6520, 2005 WL 758293, at * 5-6 (6th Cir.

Apr. 4, 2005) ("That the ultimate result was not the one [a party] had hoped for does not mean that the verdict was against the weight of the evidence."). Motions for new trial under Rule 59(a) are entrusted to the court's discretion. *See Bell v. Johnson*, 404 F.3d 997 (6th Cir. 2005); *Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001). To constitute proper grounds for granting a new trial, an error, defect, or other act must affect the substantial rights of the parties. *Id.* Applying this standard, the court finds no grounds for granting a new trial.[3]

Plaintiff's first claim concerns exclusion of the testimony of Judge Burress. In support of his argument, plaintiff has again provided the court with a long narrative explanation concerning his suspicions regarding Judge Burress, and he has attached a declaration and over twenty exhibits relating to his criminal conviction and events in Livingston County that occurred in the 1980's. Plaintiff asserts that there is a factual connection between his pursuit of a criminal appeal and his being the subject of a "pattern of abuse" by "various individuals" in the prison system. Plaintiff's present allegations are consistent with those presented to the court in the hearing on February 7, 2005, concerning Judge Burress's motion to quash the deposition subpoena. The court will not reiterate its oral opinion, adequately set forth in the transcript of proceedings (docket # 172) on that motion. Suffice it for present purposes to say that plaintiff's far-fetched and delusional allegations concerning Judge Burress, even if true, are completely unrelated to the retaliation claim against defendant Philip Bair. Exclusion of the testimony of Judge Burress from this proceeding did not affect the substantial rights of plaintiff and is not grounds for a new trial.

---

[3]Although the caption of plaintiff's motion also mentions a request for alteration of judgment under Rule 59(e), plaintiff has not presented any grounds cognizable under Rule 59(e).

Similarly, the court's pretrial rulings concerning admissibility of evidence were neither erroneous nor prejudicial. As noted above, most of the rulings favored plaintiff and tended to limit defendant's proofs. The court allowed defendant to establish only the bare fact that plaintiff had filed other grievances. Any further detail in this regard was volunteered by plaintiff himself. The only evidence that the court allowed defendant to introduce with regard to plaintiff's history of misconduct tickets was the number of misconduct tickets that plaintiff had received, which the court found to be relevant in light of plaintiff's theory of emotional distress damages. A prisoner who has received over 100 major misconduct tickets and who has been convicted on approximately half of those charges would arguably suffer less emotional distress as a result of one more ticket than a prisoner who has a nearly spotless record. Simply put, the fact that plaintiff had received numerous other tickets was relevant under Fed. R. Evid. 401 because it had the tendency to make the existence of a fact of consequence (the existence and extent of emotional distress) less probable than it would be without the evidence. The court further determined that any undue prejudice or confusion would be eliminated by prohibiting defendant from going into the details of plaintiff's previous 120 misconduct charges.[4]

Finally, plaintiff's complaints about the performance of his counsel are legally and factually meritless. As a legal matter, "litigants in a civil proceeding may not attack an adverse judgment on the grounds of ineffective assistance of trial counsel." *Shepherd v. Uniboring*, No. 02-2261, 2003 WL 21782604, at * 2 (6th Cir. July 31, 2003), *cert. denied*, 540 U.S. 1190 (2004) (citing

---

[4] Plaintiff's allegation that the court allowed defendant to elicit the fact that plaintiff had been "banned" from the Michigan circuit courts is plainly false. The court never ruled on the admissibility of such testimony, nor did counsel for either side raise the issue. Plaintiff himself volunteered this information in unresponsive answers to cross-examination questions and apparently believed that it somehow helped his cause.

*Friedman v. Arizona*, 912 F.2d 328, 333 (9th Cir. 1990)); *see Howard v. Board of Educ.*, No. 01-6433, 2003 WL 21518725, at * 5 (6th Cir. July 1, 2003); *McMahon v. Rebound Care*, No. 01-5488, 2003 WL 31780922, at * 1 (6th Cir. Dec. 11, 2002). Factually, plaintiff's accusations are meritless. As stated by this court on the record, before the jury returned its verdict, Ms. Davis's *pro bono* service to plaintiff over the past five years has been exemplary. She successfully represented him in two difficult appellate proceedings and represented him at trial in a professional and skillful fashion.

In summary, plaintiff has had his day in court and had an unfettered opportunity to present his claims to a jury of his peers, which found his testimony incredible. The jury's verdict was not affected by any error or defect in the trial or pretrial proceedings. Plaintiff's motion for a new trial will therefore be denied.


Dated:  May 12, 2005            /s/  Joseph G. Scoville
                                United States Magistrate Judge